IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| Warad West, LLC, and Anthony Caforio, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-03242-WJM |
| | ) | |
| Sorin CRM USA, Inc., et. al., | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE AND OBJECTION TO DEFENDANTS' SORIN GROUP ITALIA, S.R.L., AND SORIN S.P.A.'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs Warad West, LLC, and Anthony Caforio ("Plaintiffs"), hereby object to the Motion to Dismiss Amended Complaint ECF: 56 filed herein by Defendants, Sorin Group Italia, S.r.L., and Sorin S.p.A., (the "Foreign Defendants").  The Amended Complaint asserts a prima facie case against the Foreign Defendants, including a basis for this Court to assert jurisdiction over them.

Defendants have included with their motion the Supplemental Affidavit of Taylor Pollack.  Mr. Pollack's affidavit is offered to present evidence on the issue of the Defendants' corporate structure and operations in an effort to avoid a determination that the corporate veil should be pierced in this case. Plaintiffs dispute Mr. Pollack's affidavit and its accuracy and are aware of evidence that is available through discovery which will refute Mr. Pollack's affidavits. Pursuant to Rule 56(d), Plaintiff's seek additional discovery before being compelled to respond to Defendants' Motion and request that the motion be denied or stayed pending completion of discovery.  The Declaration of Brian J. Rayment, Exh. 1, is offered in support.

1

The Foreign Defendants misinterpret the basis for jurisdiction in their Motion. Jurisdiction is not based upon the nature of their business, but upon (A) the undercapitalization of their wholly owned US subsidiary, Sorin CRM USA, Inc., and (B) the business activities of the Foreign Defendants in the US in general, as well as Colorado specifically, through their utter control over Sorin CRM.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court accepts as true all factual allegations in the complaint, it does not accept as true legal conclusions and conclusory statements. *Id.* at 678–79.

## THE AMENDED COMPLAINT

The Amended Complaint that is the subject of Defendants' Motion to Dismiss presents the factual allegations which establish each of the claims presented in the Amended Complaint. The Amended Complaint establishes that Plaintiff, Warad, was operated by Plaintiff Caforio ("Caforio"), who had amassed a wealth of experience, knowledge and contacts in his decades of working as an independent sales representative for Sorin CRM selling and servicing cardiac pacemaker and defibrillator devices in the State of Arizona. ECF 54: 8-9.  Warad, through Caforio's hard work, perseverance and development of extensive sales contacts, became the number one revenue generating producer in the US for Defendant Sorin CRM.  ECF 54:8-9, 1-13.

2

Up until December, 2012, Plaintiffs had operated under a 2010 Independent Sales Representative Agreement. ECF 54:.9-11, 15. Then, Warad and Sorin CRM entered into an agreement dated December 18, 2012, which provided for Plaintiffs to transition their book of business to Sorin and assist Sorin in retaining it.  Sorin promised Plaintiffs to (a) develop accounts statewide, which would provide Plaintiffs significant continuing commissions on the re-assigned accounts, as described by Sorin, (b) pay Plaintiffs 5% continuing commissions on future sales in Arizona, (c) pay Plaintiffs 18.75% continuing commissions on future sales in certain accounts, (d) smoothly transition accounts so as to preserve sales, and (e) make clear announcement to the field and relevant customers regarding Plaintiffs' departure. ECF 54:.12-16. Plaintiffs relied upon Sorin's representations in entering into the 2012 Agreement. ECF 54:15-21.

Since Plaintiff's acceptance of the December 18, 2012, Contract, Sorin's actions revealed that it never intended to honor its contract and directly and proximately caused Plaintiffs to suffer significant damages. ECF 54: 27, 29, 33-46. Sorin's actions included its refusal to:  provide total payments owed to Plaintiffs for commissions; account for sales in each of the accounts at issue; transition the business by placing representatives into accounts as promised to continue Plaintiffs' sales' success; place representatives into new accounts to develop new sales; and failure to service existing accounts. Defendants defamed Caforio by advising accounts which Plaintiffs had developed and serviced that: Plaintiffs had simply "quit working;"  "walked out" on Sorin without notice, reason or advising Sorin of their whereabouts effectively "abandoning" the accounts; Sorin was precluded from calling on accounts due to Plaintiffs' legal threats made on Defendants; Plaintiffs had sued Defendant(s) and Defendant(s)' representatives; Caforio had lied, was

3

not trustworthy and a bad person and; Plaintiffs' customers could not be engaged in Sorin's clinical trials/research.  Defendants further advised Plaintiffs' former accounts to send their inquiries (including medical/service issues) to Plaintiffs knowing full well that Plaintiffs were no longer authorized to service Defendants' accounts. ECF: 16-17, 52-58. Because Sorin CRM had no intention of carrying out its obligations under the 2012 Contract, Sorin CRM committed fraud when it made material misrepresentations inducing Plaintiffs to enter into the 2012 Contract.  ECF: 13-16.

Sorin CRM's actions were intended to (and did) induce Warad to enter into the 2012 agreement, then allowing Sorin to "take" and destroy Plaintiffs' hard earned, long–-established, existing accounts and contacts, leaving Plaintiffs' without the value, contacts and business they had prior to entering into the 2012 Contract with Sorin CRM.  Sorin CRM has failed to perform or to pay pursuant to either the 2010 prior agreement or the 2012 Contract (although it did perform some of its obligations). ECF: 16-20, 23, 27-45, 48-50, 59-60, 65-76..   As noted above, Plaintiffs have suffered damages as a result of Sorin CRM's actions. ECF: ¶ 21, 23, 30, 44, 68).

In relation to the alter ego claims, the Complaint states that:

5.      Defendant Sorin Group Italia, S.r.L. ("Sorin Group Italia") owns 100% of the stock of Sorin USA, and does business in the United States, including the State of Colorado, through Sorin and other companies comprising the Sorin Group.

6.      Defendant, Sorin, S.p.A., ("Sorin S.p.A.") is a foreign corporation which owns 90% of the stock of Sorin Group Italia. The remaining 10% of Sorin Group Italia's stock is owned by related subsidiaries of Sorin, S.p.a. Sorin S.p.A. does business in the United States, including the State of Colorado, through Sorin USA, Sorin, and other companies comprising the Sorin Group.46.    Sorin Group Italia, S.r.L., and Sorin S.p.A. have exercised substantially total control over Sorin, controlling budgets, financing and operations.

120.    Sorin Group Italia, S.r.L., and Sorin S.p.A. have exercised substantially total control over Sorin, controlling budgets, financing and operations.

121.    Sorin is a mere instrumentality of Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A.

122.    Sorin S.p.A. owns all or a majority of the capital stock of Sorin Group Italia, S.r.L., which in turns owns all or a majority of the capital stock of Sorin Group USA, Inc., which in turns owns all or a majority of the capital stock of Sorin.

123.    Sorin, Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A. have common directors or officers.

124.    Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A. finance Sorin.

125.     Sorin Group USA, Inc., subscribes to all the capital stock of Sorin and caused its incorporation.

126.    Sorin Group Italia, S.r.L., subscribes to all the capital stock of Sorin Group USA, Inc. and caused its incorporation.

127.    Sorin S.p.A. and its subsidiaries subscribe to all the capital stock of Sorin Group Italia, S.r.L. and caused its incorporation.

128.    Sorin has grossly inadequate capital.

129.    Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A. pay the salaries or expenses or losses of Sorin.

130.    Sorin has substantially no business except with Sorin Group USA, Inc., Sorin Group Italia, S.r.L. and Sorin S.p.A.

131.    Sorin has no assets except those conveyed to it by Sorin Group USA, Inc., Sorin Group Italia, S.r.L. and Sorin S.p.A.

132.    Sorin, in the papers of Sorin S.p.A., and in the statements of its officers, is referred to as a subsidiary, department or division.

133.    Sorin's directors and executives do not act independently in the interest of the subsidiary but take direction from Sorin Group USA, Inc., Sorin Group Italia, S.r.L. and Sorin S.p.A.

134.    Sorin, Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A.  share the same logos.

135.    Sorin, Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A. officers and employees share the same email extension, "sorin.com".

136.    Sorin shares employees with other Sorin S.p.A. subsidiaries.

137.    Sorin, Sorin Group USA, Inc. and Sorin S.p.A. share some of the same corporate officers throughout the formation of individual entities across the United States.

138.    Sorin shares facilities with other Sorin S.p.A. subsidiaries.

139.    Sorin, Sorin Group USA, Inc., Sorin Group Italia, S.r.L. and Sorin S.p.A. share revenues.

140.     The formal legal requirements of treating Sorin as a separate and independent corporation of Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A. are not observed.

141.    Treating Sorin as a separate and independent entity from Sorin Group USA, Inc., Sorin Group Italia, S.r.L., and Sorin S.p.A. would perpetrate a fraud because Plaintiffs relied upon Sorin to honor its contractual obligations,

however, Sorin had no present ability to honor its obligations when it entered into the Mutual Separation Agreement.

142. Plaintiffs are personally aware of the integration of the various Defendant entities at a business and financial level through interactions and conversations with the companies' officers and directors at various meetings, gatherings and company functions.

143. Plaintiffs are aware of the integration of the various Defendant entities at a business and financial level, and the fact that Sorin is doing the business of its parent corporations, by various means, including control of product pipeline, yearly sales forecasting, the use of the term "distributor" when referring to the Sorin US CRM entity, and general finances including the flow of money across the different business units through interactions with:

A.     the Sorin, S.p.A. CEO Andre Michel Ballester at various meetings, gatherings and company functions, specifically personal meetings or conversations with Mr. Ballester in Phoenix Arizona, Orlando Florida, Denver Colorado and Atlanta, Georgia,

B.     The Sorin SpA President of CRM Group, Stefano DiLullo, at various meetings, gatherings and company functions, specifically personal meetings or conversations with Mr. DiLullo in Phoenix Arizona, Boston Mass. and Denver Colorado among other places.

144. Plaintiffs are aware of the integration of the various Sorin entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, the parent companies' control over Sorin and the lack of formal distinctions between the entities.  Sorin's parent corporations totally control many key aspects of Sorin's business,  including control of product pipeline, yearly sales forecasting, marketing and operating budgets and in depth finances specific to the under capitalization of Sorin including the flow of money across the different business units, the use of the term "distributor" when referring to the Sorin US CRM entity, as well as control over finances and the supply of cash.. Sorin personnel had to travel to Europe frequently to seek approval of business operation and obtain capital to operate. These facts were learned through interactions with the Sorin Vice President of Marketing Kurtis Goos at various meetings, gatherings and company functions, specifically personal meetings or conversations with Mr. Goos in Phoenix Arizona, Orlando Florida, Denver Colorado and Atlanta, Georgia.

145. Plaintiffs are aware of the integration of the various Sorin entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, the parent companies' control over Sorin and the lack of formal distinctions between the entities.  Sorin's parent corporations totally control many key aspects of Sorin's business,  including control of product pipeline, yearly sales forecasting, operating budgets, as well as control over finances and the supply of cash. Sorin personnel had to travel to Europe frequently to seek approval of business operation and obtain capital to operate. These facts were learned through interactions with the Clyde "Skip" Dunavent, Sorin's Manager of Business Development, at various meetings, gatherings and company functions, specifically personal meetings or conversations with

Dunavent in Phoenix Arizona, Orlando Florida, Denver Colorado and Atlanta, Georgia among others.

146.     Plaintiffs are aware of the integration of the various Sorin entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, the parent companies' control over Sorin and the lack of formal distinctions between the entities. Sorin's parent corporations totally control many key aspects of Sorin's business, including control of product pipeline and delivery, yearly sales forecasting, operating budgets, the use of the term "distributor" when referring to the Sorin US CRM entity,  and in depth, control over finances and the supply of cash including the flow of money across the different business units. These facts were learned through interactions with the Company Attorney Ted Biderman at various meetings, gatherings and company functions, specifically personal meetings or conversations with Mr. Biderman in Phoenix Arizona, Orlando Florida, Denver Colorado and Atlanta, Georgia, and multiple conversations with Mr. Biderman both while he was working for Sorin in Europe and then again upon his return back to the United States.

147.     Plaintiffs are aware of the integration of the various Sorin entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, the parent companies' control over Sorin and the lack of formal distinctions between the entities. Sorin's parent corporations totally control many key aspects of Sorin's business, including control of product pipeline, yearly sales forecasting, operating budgets, and control over finances and the supply of cash. These facts were learned through interactions with the Company Vice President Dan Hackman at various meetings, gatherings and company functions, specifically personal meetings or conversations with Mr. Hackman in Phoenix Arizona, Orlando Florida, Denver Colorado and Atlanta, Georgia, and Plymouth Minnesota among other locations.

148.     Plaintiffs are aware of the integration of the various Sorin entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, the parent companies' control over Sorin and the lack of formal distinctions between the entities.  Sorin's parent corporations totally control many key aspects of Sorin's business, including control of product pipeline, yearly sales forecasting, operating budgets including the flow of money across the different business units, the use of the term "distributor" when referring to the Sorin US CRM entity,  and control over finances and the supply of cash. These facts were learned through interactions with the Company Controller Anthony Hyk at various meetings, gatherings and company functions, specifically personal meetings or conversations with Mr. Hyk in Phoenix Arizona, Orlando Florida, Denver Colorado and Plymouth Minnesota.

149.     Plaintiffs are aware of the integration of the various Sorin entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, the parent companies' control over Sorin and the lack of formal distinctions between the entities.Sorin's parent corporations totally control many key aspects of Sorin's business, including control of product pipeline, yearly sales forecasting, operating budgets, the plan to eliminate for cost savings purposes the independent sales force, and control over finances and the supply

of cash. These facts were learned through interactions with the Company Vice President Timothy Dougherty at various meetings, gatherings and company functions, specifically multiple personal meetings or conversations with Mr. Dougherty in Phoenix Arizona and Atlanta, Georgia.

150.    Plaintiffs were able to gain distinct and high level knowledge regarding the operations, product development pipeline, and operations/management of the business units across Sorin through the invitation, attendance and participation in management meetings, representative and product advisory boards, as well as meetings in Europe, meetings in the US, personal meetings with CEO Andre Michel Ballester; VP Stefano DiLullo; Sorin Controller, Tony Hyk; VP Business Development/General Counsel Ted Biderman; Sorin VP Sales Dan Hackman; VP of Sales Richard Ames; Director of Inventory Bob Bartusiak; VP Global Marketing Marta Antonucci, VP of Research and Development Catherine Picard, Director of Programmer Development Richard Poulet, Director of US Customer Service Kelly Richers  and other high level corporate officers of the Sorin Group. Through these interactions and conversations with other Sorin representatives and personnel, Plaintiff is aware of the integration of the various Sorin Group entities at a business and financial level, the fact that Sorin is doing the business of its parent corporations, that Sorin's parent corporations totally control many key aspects of Sorin's business, including control of product pipeline and delivery, budget, actual yearly sales numbers specific to the US, yearly sales forecasting, operating budgets, and specifically information relating to the control over finances including the flow of money across the different business units, and the supply of cash by the parent companies specific to the under capitalization of Sorin, the lack of formal distinctions between the entities, and the plan to eliminate for cost savings purposes the independent sales force.

151.    Upon information and belief, the full extent of the control of Sorin by its parent corporations will be disclosed during discovery herein.

152.    Because of their common ownership and control, shared employees, failure to recognize formal separations and distinctness of the entities, the gross undercapitalization of Sorin, and the fact that Sorin is merely doing the business of its parent corporations by marketing and selling their products in the US on insufficient capital for that business, and returning capital to Europe in exchange for products, Sorin Group USA, Inc., Sorin Group Italia, S.r.L. and Sorin S.p.A. are liable for all obligations of Sorin to Plaintiffs.

The factual statements establish all of the elements necessary to support an alter ego

claim under Colorado, Arizona or Delaware law[1].

---

[1] *Mid Valley Real Estate solution v. Hepworth-Pawla*k, --- P.3d ----. 2013 WL 3943215 (Colo. App.), 2013 COA 119; *Washington National v. Thomas*, 117 Ariz. 95, 570 P.2d 1268, Blue Sky L. Rep. P 71, 366; *Maloney-Refaie v. Bridge at School, Inc.* 958 A.2d 871, Del.Ch., 2008

Sorin Group Italia, S.r.L, and Sorin S.p.A. take great liberties with the facts when arguing that the claims against them are not supported by the facts and that the extraneous materials presented in response to the first Motion to Dismiss establish that Sorin management makes its own decisions. Sorins' assertions are contrary to the allegations in the Amended Complaint ECF 54, and contrary to the true facts. On this basis, Plaintiffs have sought to have this motion treated as one for summary judgment and permit Plaintiffs the opportunity to proceed with discovery prior to responding.

Plaintiffs have pled and can prove that the Foreign Defendants are mere alter egos of each other and of Sorin, as Sorin S.p.A. and its European subsidiaries required Sorin CRM to apply for financing and approval of its business plans on an annual basis and to not act independent of the parent companies.  Plaintiffs can also prove fraud through Defendant Sorin CRM entering into contracts that it has no ability or intent to perform.[2]

## ARGUMENT

Defendants asserts that this Court lacks jurisdiction over them and that Plaintiffs' Complaint does not accurately present jurisdictional matters.  While Plaintiffs have indeed asserted that the Foreign Defendants do business in the United States and the State of Colorado, those facts are not the sole basis for jurisdiction. Plaintiffs also assert jurisdiction based upon the piercing the veil theory and the fact that there is no real distinction between the Foreign Defendants and their US subsidiaries who are registered to do business in Colorado and Arizona.

---

[2] A fraud claim can also be based on a promise to perform future acts with a present intention not to perform. *Employer's Liability Assurance Corp. v. Lunt*, 313 P.2d 393, 396 (Az.1957).

9

In *Washington Nat. Corp. v. Thomas*, 570 P.2d 1268 (Ariz.App. 1977), the Court

found that a Delaware corporation like Sorin CRM that is inadequately financed as a

separate unit from the point of view of meeting its normal obligations foreseeable in a

business of its size and character, because of either inadequate financing or having its

earnings drained off so as to keep it in a condition of financial dependency, creates a

basis for piercing the veil. The Court held:

> Among the factors which courts have considered in disregarding the separate
> corporateness of a parent corporation and its subsidiary is the inadequate
> capitalization of the subsidiary. See cases Annot. 63 A.L.R.2d 1042 at p 1055 et
> seq. As is stated in Henn, Law of Corporations, 2nd Ed. at pp. 258-259, the
> corporate identity will be recognized unless " . . . (t)he corporation is inadequately
> financed as a separate unit from the point of view of meeting its normal
> obligations foreseeable in a business of its size and character, because of either
> inadequate financing or having its earnings drained off so as to keep it in a
> condition of financial dependency. . . . " When the facts disclose such
> undercapitalization, and when observance of the corporate form will sanction a
> fraud or promote an injustice, the corporate fiction will be disregarded.
>
> Instead of having its earnings drained off so as to keep it in a condition of
> financial dependency, the facts here disclose that The Trust Company was
> deliberately programmed to lose large sums of money. Without the infusion of
> $100,000 each year The Trust Company could not meet its normal operating
> expenses. Allowing WNC to avoid liability by interposing the corporate fiction
> would work a grave injustice upon the appellees.

Here, as in *Washington Nat.,* Sorin CRM is undercapitalized, totally dependent upon its

Foreign Defendants for financing and subject to the control of the Foreign Defendants.

Plaintiffs agree that the test for jurisdiction is whether or not the Colorado long

arm statute permits the exercise of jurisdiction over the Foreign Defendants in

conformity with the Due Process Clause of the US Constitution. *Taylor v. Phelan*, 912

F.2d 429, 431 (10th Cir. 1990). Plaintiffs disagree with Defendants' conclusion that this

test has not been met in relation to the Foreign Defendants. In *First Horizon Merchant*

*Services, Inc. v. Wellspring Capital Management, LLC*, 166 P.3d 166, 177 (Colo.App.,

2007), the Court found that an alter ego theory is sufficient to establish jurisdiction over

a foreign parent corporation:

> For purposes of personal jurisdiction, agency and alter ego, while different legal concepts, often depend on the same facts when parent and subsidiary corporations are involved. Particularly, facts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant for both theories. "Such control could be evidence that the subsidiary is the parent's alter ego because the subsidiary has no real separate corporate existence." *SGI Air Holdings II LLC v. Novartis Int'l AG, supra,* 239 F.Supp.2d at 1166. Similarly, such control could be evidence that the subsidiary is the parent's agent because the subsidiary is conducting the "real" business of the parent. The objective of either theory is to establish that the parent company has the minimum contacts with the forum necessary to support a finding of jurisdiction. *SGI Air Holdings II LLC v. Novartis Int'l AG, supra,* 239 F.Supp.2d at 1166.

> To exercise personal jurisdiction on a theory of either agency or alter ego, the plaintiff bears the burden of demonstrating a prima facie case. *Berry v. Lee,* 428 F.Supp.2d 546, 556 (N.D.Texas 2006); *Williams v. Firstplus Home Loan Owner Trust 1998–4,* 310 F.Supp.2d 981, 994 (W.D.Tenn.2004)(plaintiff must allege facts that show agency relationship such that personal jurisdiction may be maintained); *Beyond Sys., Inc. v. Realtime Gaming Holding Co.,* 878 A.2d 567, 574 (Md. 2005).

The facts presented herein support an alter ego claim which establishes both liability

and jurisdiction.

**Plaintiffs Have Properly Pled a Claim for Fraud Based Upon the Alter Ego Theory**

Finally, Defendants assert that Plaintiffs have not properly pled an alter ego

claim. Plaintiffs again disagree.  Piercing the corporate veil is a principal recognized by

Delaware, the state of incorporation of Sorin CRM, as well as Colorado and Arizona,

states where it is domesticated. In Arizona, a piercing the veil claim is established and

the corporate fiction will be disregarded upon the concurrence of two circumstances;

that is, when the corporation is, in fact, the alter ego of one or a few individuals and

when the observance of the corporate form would sanction a fraud or promote injustice.

*Whipple v. Industrial Commission*, 121 P.2d 876, 878 (Az. 1942); *Walker v. Southwest Mines Development Co.*, 81 P.2d 90, 95 (Az. 1938). The disregard of the corporate fiction has not been limited to instances where the incorporation is for fraudulent purposes, but may be observed if after organization the corporation is employed for fraudulent purposes. *Employer's Liability Assur. Corp. v. Lunt*, 313 P.2d 393, 395 (Az. 1957). A fraud claim may be based on a promise to perform future acts with a present intention not to perform. *Employer's Liability Assurance Corp. v. Lunt*, 313 P.2d 393, 396 (Az.1957).

Arizona, as with Delaware and Colorado, has an interest in precluding fraud. *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1213 (Del.Ch., 2010).  For vicarious liability to apply under Arizona law, Plaintiffs must show that the unity of control between a parent and subsidiary was so pronounced that "the individuality or separateness" of the two "had ceased to exist." *Ferrarell v. Robinson,* 465 P.2d 610, 613 (Ariz. App. 1970); *see also Gatecliff,* 821 P.2d, 725, 729 (Az. 1991) (" 'When one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require.' ") (quoting *Walker v. Sw. Mines Dev. Co.,* 81 P.2d 90, 95 (Az. 1938)).

Here, we have a situation in which Sorin CRM, a Delaware corporation, is owned and totally controlled by a foreign corporation, both financially and operatively. Defendant Sorin CRM's capital is insufficient for its business and rendered it entirely reliant upon its parent corporation for capital as well as approval of its business plans.

As stated in *Maloney-Refaie v. Bridge at School, Inc.* 958 A.2d 871, 881 (Del.Ch.,

2008):

> [A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functions properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.
>
> In addition, a court may disregard the corporate form "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation ... are involved."

To permit Defendants, the Sorin Group, to operate an undercapitalized corporation and

retain all of its capital in parent corporations constitutes a fraud upon Plaintiffs and

others similarly situated, i.e., those owed substantial funds by Sorin CRM.

Additionally, Defendant's intention not to perform, as stated in the Amended

Complaint, ECF 54, supports a fraud claim. A fraud claim can be based on a promise to

perform future acts with a present intention not to perform. *Employer's Liability*

*Assurance Corp. v. Lunt*, 313 P.2d 393, 396 (Az.1957). Fraud may also be proven by

the promisor known present inability to perform. As stated in 5 AmJur POF 2nd 727:

> A fraudulent intent not to perform a promise, existing at the time it was made, may be inferred from the circumstances offered in proof; indeed, it has been held that circumstantial evidence of subsequent conduct is admissible and may be sufficient. One's intent not to perform, existing at the time the promise was made, is usually not susceptible of direct proof, but may be ascertained from the promisor's subsequent conduct and speech.

It is unclear how Defendants' counsel can state emphatically that Sorin CRM is

operated as a distinct entity from Sorin Group Italia and Sorin SpA, especially in light of

its undercapitalization and  information obtained in a separate lawsuit involving Sorin

CRM that evidences the contrary. (*Bio Med Technologies Corp. v. Sorin CRM USA, Inc. f/k/a ELA Medical, Inc.*, Dist. Of Colo., 1:14-cv-00154-WJM-CBS). Plaintiff will seek to have the protective order in that case revised to permit use of the information herein or will seek production of that information in discovery herein.

<b><u>CONCLUSION</u></b>

Plaintiffs have properly pled all of the claims in their Complaint with adequate specificity. To the extent this Court deems that there are deficiencies in the pleading, Plaintiffs have additional facts that can be pled to support their claims and would seek leave to amend to the extent necessary. It is an abuse of discretion to deny a motion for leave to amend without reason. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Wherefore, Plaintiffs pray that this Court deny Defendants' Motion to Dismiss or, in the alternative, permit Plaintiffs to further amend their Complaint to the extent this Court deems any amendment necessary. A proposed Second Amended Complaint ECF 58-1 has been submitted for approval by the Court.

DATED this 26th day of October, 2015.

*/s/Brian J. Rayment*
Brian J. Rayment, OBA #7441
KIVELL, RAYMENT & FRANCIS, P.C.
7666 East 61st St., Suite 550
Tulsa, OK   74133
Phone:  918.294.0047
Facsimile:  918.893.3295
E-mail:  Brayment@kivell.com

Jo Anne M. Zboyan, CBar #14372
SPRINGER & STEINBERG, PC
1600 Broadway, Suite 1200
Denver, CO  80202
Phone:  (303) 861-2800
Facsimile:  (303) 327-5973
Email:  jmz@jmz-law.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2015, the foregoing Response was sent via electronic mail to the following:

Jared B. Briant
Faegre Baker Daniels LLP
3200 Well Fargo Center
170 Lincoln St.
Denver, CO 80203
Telephone:  303 607-3500
Facsimiles: 303 607-3600
Email: jared.briant@faegreBD.com


Kathryn A. Feriereisel
Faegre Baker Daniels LLP
311 S. Wacker Dr. Suite 4400
Chicago, Ill. 60606-6622
Telephone:  312  212-6500
Facsimile 312  212- 6501
Email:  Katie.feiereisel@faegreBD.com

Counsel for Defendants


*s/Brian J. Rayment*
Brian J. Rayment